## Ewell v. State Workmen's Insurance Fund et al.

*Workmen's Compensation Act—Appeals—Notice—Act of June 26, 1919.*
The provision of section 427 of the Workmen's Compensation Act of June 26, 1919, P. L. 642, 665, requiring a party taking an appeal to serve the adverse party with written notice thereof, is mandatory, and where no notice is given, the appeal will be stricken off.

Rule to strike off appeal. C. P. No. 5, Phila. Co., Dec. T., 1923, No. 7895.

*S. J. Spiker,* for plaintiff.

HENRY, P. J., 52nd judicial district, specially presiding, March 13, 1924.—The plaintiff has taken a rule to strike off the appeal in this case taken by the State Workmen's Insurance Fund from the decision of the Workmen's Compensation Board. The petition for the rule sets forth that no notice of the appeal was given the plaintiff, as required by section 427 of article VI of the Act of June 26, 1919, P. L. 642, 655, and this section of the act provides as follows: "The party taking the appeal shall, at the time of taking the appeal, serve upon the adverse party a written notice thereof, setting forth the date of the appeal to the court in which the same is filed, and shall file with his notice of appeal such exceptions to the action of the board as he may desire to take, and shall specify the findings of fact, if any, of the board, or of the referee, sustained by the board, which he alleges to be unsupported by competent evidence."

There is no denial of this averment, and so it must be taken to be admitted. This provision of the act is mandatory, and, in the absence of compliance therewith, the appeal must be stricken off.

And now, to wit, March 13, 1924, rule absolute.

NOTE.—See De Marko *v.* Hiller, 3 D. & C. 533; Neil *v.* Lee Tire and Rubber Co., 3 D. & C. 811.

---

## Ritchie's Estate.

*Wills—Construction—Estates pur autre vie—Right of occupancy of home.*
Testator provided in his will as follows: "To my wife M. and my sister E. the income from the balance of my estate to be equally divided between them, my sister to occupy her present home during the balance of her life," with a gift over in a subsequent clause "after the decease of my wife and sister" of the "balance of my estate" to be equally divided between his three children: *Held,* (1) that E.'s right to occupancy of the house did not affect her share of the income from the residue of the estate; (2) that E. was entitled to the use for life of such of the furniture and household effects as belonged to the testator and formed a part of the furnishings of the home at the time of his death; and (3) that on the death of M., her half of the income went to her personal representatives during the life of E., and the three children, as remaindermen, took nothing until E.'s death.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1923, No. 3904.

The questions involved arose upon the audit of the first and final account of George M. Ritchie, executor under the will of William J. Ritchie, deceased. The clauses of the will under which the questions arose are as follows:

"4th. To my wife, Martha J. Ritchie, and my sister Elizabeth J. Brown, the income from the balance of my estate, to be equally divided between them, my sister to occupy her present home during the balance of her life.

"5th. After the decease of my wife and sister, I direct that the balance of my estate be equally divided between my daughters, Martha A. Gill and M. Elizabeth Worrall, and my son George M. Ritchie."

VAN DUSEN, J., auditing judge, filed the following adjudication:

"William J. Ritchie died March 22, 1923, leaving his last will, duly probated, whereby, after pecuniary bequests of $1000 and $1, as set forth in the second and third paragraphs of his will (a copy whereof is hereto annexed), he gave the income from the balance of his estate to be equally divided between his wife and sister, further providing, 'my sister to occupy her present home during the balance of her life,' and gave the remainder of his estate, after the death of his wife and his sister, to his three children, named in the fifth paragraph of his will, in equal shares.

"Virginia, Marion and William D. Ritchie, Jr., to whom testator bequeathed $1000 to be invested and equally divided between them when the youngest is of age, are all minors. This legacy is awarded to the guardian of their estates when duly appointed and qualified. If the attempt to withhold possession from the elder children until the youngest becomes twenty-one years of age is valid, a trustee would be the proper fiduciary, as his duties would extend beyond the minorities of the beneficiaries. This withholding, however, is a void restraint upon alienation: See Shallcross's Estate, 200 Pa. 122; Hallowell's Estate, 16 Dist. R. 17; Burke's Estate, 20 Dist. R. 703; Boothroyd's Estate, 23 Dist. R. 712; Allison's Estate, 24 Dist. R. 484; Engel's Estate, 26 Dist. R. 27; Schwartz's Estate, 254 Pa. 88; Bennett's Estate, 41 Pa. Superior Ct. 579.

"The will provides:

"'4th. To my wife, Martha J. Ritchie and my sister Elizabeth J. Brown, the income from the balance of my estate, to be equally divided between them, my sister to occupy her present home during the balance of her life.'

"The petition for distribution asks:

"'Does this confer a mere right of occupancy in 'her present home' (6429 Saybrook Ave.) or does it give the sister a life estate in said property with the right to either occupy or rent? In either event, is the sister, Elizabeth J. Brown, entitled to the use of decedent's furniture which was in 6429 Saybrook Ave. at the time of the testator's death? Is this interest in 'her present home' (6429 Saybrook Ave.) a specific gift in addition to her life interest in the income of testator's estate or does the life estate in the income include the right 'to occupy her present home;' if it does, then should not this right of occupancy be appraised?'

"The petition for distribution states that for several years prior to the decedent's death he resided with his sister, Elizabeth J. Brown, at No. 6429 Saybrook Avenue, in a house owned by the decedent, part of the furniture contained therein belonging to the decedent and part of it to his sister. Neither at the time the will was written, at the time of the decedent's death nor at any other time did testator's wife live at the same house.

"The question to be here decided is whether the sister's right of occupancy of the house affects her share of the income of the residue of the personal estate. I do not think it does. The testator, in dealing with the home, must have thought of it as something apart from his income-producing property; it is disposed of only for the life of the sister, whereas the gift of income continues for the life of the survivor; neither real nor personal property is given to a trustee; the right of the sister, whatever it is, is a specific devise and passes directly to her, and her rights must be worked out directly between her and the remaindermen. The executor of the decedent and the income in his hands have nothing to do with it. Moreover, the practical difficulties would be considerable in working out the rights of the parties by charges against the sister's share of the income. The right of occupancy must be valued in

4 D. & C.

order to do this. No evidence has been submitted from which its value could be determined. It must be revalued from time to time, which would hamper distribution of income. The argument of inexpediency is not without weight.

"The next question is as to the sister's right in the furniture and other contents of the home. The record before me does not disclose of what articles they consisted nor the value thereof, although it is probable that all of the furniture and household effects included in the inventory and appraisement are embraced in that category. That there was something is evident, and, so far as it is embraced in the account, the distribution of it is before me. The picture in the testator's mind must have been that of his sister going on after his death just as before. Under the circumstances, the word 'home' implies something more than the bare house. In Graham v. Heidrick, 204 Pa. 238, the 'present home and residence' was held to include not merely the dwelling-house, but the whole tract of land and buildings embraced in a small farm where the testator lived with his wife and daughter, the court referring to the natural use of such words in colloquial speech to include both land and buildings. If 'home' may include farm land used in connection with a dwelling, it may even more naturally be used to include the furniture and contents of a house, without which it would not be a real home. I, therefore, think that the sister is entitled to the use for life of such of the furniture and household effects as belonged to the testator and formed part of the furnishings of premises No. 6429 Saybrook Avenue at the time of his death. . . .

"The testator's widow, Martha J. Ritchie, died May 8, 1923, and the remaindermen ask that one-half of the *corpus* of the estate, as well as one-half of the income, be awarded to them; but the gift to them is only 'after the decease of my wife and sister.' The bequest of income to the wife and sister is not limited to their respective lives, but embraces the income until the death of the survivor of them. It follows that the wife's half of the income must go to the personal representatives of the wife during the life of the sister: See Shuster's Estate, 4 D. & C. 119. No trustees are appointed for the residuary estate. In Ritter's Estate, 148 Pa. 577, it was held by the court below (page 582) : 'The principle is well established that where a person by his will, either in express terms or by legal implication, has given the income of his personal estate to one for life, and on his or her decease to another, or left it, on the termination of the life interest, undisposed of, so that it will go to his heirs-at-law or to his residuary legatee, and has not in terms placed it in trust with any trustee other than the executor, it is the province and duty of the executor to hold it, and to pay over the income from time to time to the legatee for life, and at the death of such legatee to pay over the principal to the person who may by the will be then entitled to it, or in default of any ulterior disposition of it by will to distribute it among the heirs-at-law.'

"This was affirmed by the Supreme Court without an opinion. No authorities are cited nor is the case again referred to on the point of practice. If the executors are not *ex-officio* trustees, a trustee might be appointed, as was done in Varner's Appeal, 80 Pa. 140. Another disposition of the fund might be that indicated in section 23 of the Fiduciaries Act of 1917, to wit, deliver the furniture and household effects of the home and one-half of the residue of the personal estate to the· sister, upon her giving security 'to secure the interests of the person or persons entitled in remainder.' I am of opinion that the most convenient and appropriate method is that the sister, Elizabeth J. Brown, shall receive the furniture and the contents of the home upon her giving security as provided in section 23 of the Fiduciaries Act of 1917, unless the entry of security is waived by the remaindermen; and they are so

awarded.   These articles are subject to wear and tear, and the decedent's executor ought not to be subjected to responsibility for them while their use and possession remain with another.   On the other hand, the rest of the personalty may conveniently remain in the hands of the executor as trustee, to pay one-half of the income thereof to the sister during her life and the other one-half to the personal representative of the estate of the wife during the life of the sister, and on the decease of the sister to pay over the whole *corpus* to the remaindermen designated in the will; and I so award it. . . .

"There was no objection to the account, which shows a balance of principal, $18,766.57, from which deduct cash paid for taxes on personal property as per appearance of counsel, $12.60; balance, $18,753.97, which, composed as in the account stated, is awarded as follows: . . .

"To Elizabeth J. Brown, testator's furniture and household effects which were in the home, No. 6429 Saybrook Avenue, at the time of his death, for life, upon the entry by her of security for the protection of the interests of the remaindermen.

"And the balance then remaining is awarded to be retained by the accountant in trust to pay the income to Elizabeth J. Brown and to the personal representative of the estate of Martha J. Ritchie, deceased, in equal shares, during the lifetime of Elizabeth J. Brown, with remainder after her death as provided by the will.

"The account of income shows a balance of $621.71, which, together with all additional income—including interest on deposits, if any—to date of actual distribution, is awarded to Elizabeth J. Brown and to the personal representative of the estate of Martha J. Ritchie, deceased, subject to the payment by them of the transfer inheritance tax due to the Commonwealth of Pennsylvania on value of their respective life estates."

Exceptions by the remaindermen.

*Ashton Locke Worrall*, for exceptions; *William E. Stokes*, contra.

HENDERSON, J., April 25, 1924.—We agree with the interpretation of the will as made by the auditing judge and for the reasons given by him, and, hence, the exceptions are dismissed and the adjudication is confirmed absolutely.

---

## Commonwealth v. Clark, Manager.

*Indictment—Averments—New trial—Arrest of judgment—Cold storage—Act of June 26, 1919.*

An indictment which charges a violation of the Cold Storage Act of June 26, 1919, P. L. 670, and does not set forth that the eggs alleged to have been sold by defendant have been kept "for a period of thirty days and over in cold storage," and fails to aver that the eggs were sold "at retail," is fatally defective, and a motion in arrest of judgment was granted.

Motions for new trial and in arrest of judgment.   Q. S. Allegheny Co., Sept. Sess., 1922, No. 763.

Before Swearingen, Carnahan, Douglass and Rowand, JJ.

*J. A. Langfitt*, Assistant District Attorney, for Commonwealth.

*N. R. Criss*, for defendant.

SWEARINGEN, J., June 2, 1923.—This indictment was found Sept. 21, 1922. It was framed under the provisions of the Cold Storage Act, approved June 26, 1919, P. L. 670.   Section 9 of this act provides: "It shall be unlawful

4 D. & C.